BETSY JOHNSON, CA Bar No. 119847
betsy.johnson@ogletree.com
EVAN R. MOSES, CA Bar No. 198099
evan.moses@ogletree.com
ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
Y. DOUGLAS YANG, CA Bar No. 307550
douglas.yang@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:    213.239.9800
Facsimile:    213.239.9045

Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HERNANDEZ, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>[Filed concurrently with Declarations of Andrea K. Cox and Alexander Chemers, Certification of Interested Entities or Persons, and Civil Case Cover Sheet]<br><br>Complaint Filed:    December 16, 2016<br>Trial Date:    None |

29323962_7.docx

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendant FedEx Ground Package System, Inc. ("Defendant") removes this action from the Superior Court of the State of California for the County of Alameda, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

I. **THE STATE COURT ACTION**

1. On or about December 16, 2016, plaintiff Steven Hernandez ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Steven Hernandez, on behalf of himself and others similarly situated, Plaintiff, v. FedEx Ground Package System, Inc., a Delaware corporation; and Does 1 through 50, inclusive, Defendants*, which was assigned case number RG16842756 (the "State Court Action").

2. On or about February 21, 2017, Plaintiff filed a First Amended Class Action Complaint ("First Amended Complaint") in the Superior Court of the State of California, County of Alameda. The First Amended Complaint asserts the following claims for relief against Defendant: (1) Failure to Pay Minimum Wage; (2) Failure to Pay Wages and Overtime in Violation of Labor Code § 510; (3) Meal-Period Liability Under Labor Code § 226.7; (4) Rest-Break Liability under Labor Code § 226.7; (5) Violation of Labor Code § 226(a); (6) Violation of Labor Code § 203; (7) Violation of Business & Professions Code § 17200 *et seq.*; and (8) Penalties Pursuant to Labor Code § 2699 *et seq.*

3. On February 22, 2017, Defendant received via the undersigned counsel of record a copy of the First Amended Complaint, as well as other documents filed in the State Court Action. A true and correct copy of the First Amended Complaint is attached as **Exhibit A** to this Notice of Removal. Declaration of Alexander Chemers ("Chemers Decl."), ¶ 2.

4. On March 14, 2017, Defendant's attorneys executed a Notice and Acknowledgment of Receipt, thereby triggering the 30-day period for Defendant to respond to the First Amended Complaint. A true and correct copy of the executed Notice and Acknowledgment of Receipt is

attached as **Exhibit B** to this Notice of Removal.  Chemers Decl., ¶ 3.

5.    Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the First Amended Complaint and the citizenship of "Doe" defendants is disregarded for the purposes of removal.  28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

6.    <u>This Notice is Timely</u>.  This Notice of Removal is timely filed within 30 days of Defendant's attorneys executing the Notice and Acknowledgment of Receipt.

## II.    <u>JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

7.    This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).[1]

### A.    <u>The Size of the Putative Class Exceeds 100</u>

8.    In his First Amended Complaint, Plaintiff defines the proposed class as: "[A]ll individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit."  Ex. A, ¶ 14.

9.    Defendant's employment records show that there are thousands of current and former employees who fall within Plaintiff's proposed class.  For example, during the time that Plaintiff worked for Defendant, he worked as a Package Handler.  Even if the proposed class is limited to only those persons holding the "Full-Time Package Handler" or "Part-Time Package Handler" positions in California within the four-year period prior to the filing of this lawsuit, there would be at least 19,044 putative class members.  Declaration of Andrea K. Cox ("Cox Decl."), ¶ 9.

---

[1] Defendant is the only named defendant in this matter and, thus, there are no other defendants to consent to removal.  Furthermore, an action may be removed by a single defendant under CAFA without the consent of the other defendants.  *See* 28 U.S.C. § 1453(a).

29323962_7.docx

**B.    The Parties Are Diverse**

10.    <u>Citizenship of Defendant</u>.  Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184.  The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

11.    At all times on or after the date this action was filed, Defendant has been a citizen of the states of Pennsylvania and Delaware.  Defendant has its principal place of business in Moon Township, Pennsylvania, as that is the location of its headquarters from which its officers direct, coordinate, and control its business operations.  Cox Decl., ¶¶ 2-7.  In addition, Defendant is incorporated in the State of Delaware. *Id.*  Defendant is neither incorporated in California, nor does it have a principal place of business in California. *Id.*  Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Pennsylvania and Delaware, and not a citizen of California.[2]

12.    <u>Citizenship of Plaintiff and putative class members</u>.  For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

13.    The First Amended Complaint alleges that "Plaintiff is a resident of California and, during the time period relevant to this Complaint, was employed by Defendants as a non-exempt

---

[2] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal.  28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

29323962_7.docx

hourly employee within the State of California." Ex. A, ¶ 2. Likewise, Defendant's employment records confirm that throughout his employment with Defendant, Plaintiff lived in the State of California, including the home address that Plaintiff provided for payroll purposes and the address shown on Plaintiff's driver's license, which was issued by the State of California. Cox Decl., ¶ 8. Thus, Plaintiff is a citizen of the State of California.

14.     Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff himself was somehow a citizen of Pennsylvania or Delaware (and there is no evidence that he is), there is no possible way that the tens of thousands of putative class members, all of whom worked in California (Ex. A, ¶ 14), were also citizens of Pennsylvania or Delaware.

15.     Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met.

**C.     The Amount in Controversy Exceeds an Aggregate of $5,000,000**

16.     Plaintiff has not alleged a specific amount in controversy in the First Amended Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

17.     In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct.

1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007).  Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

18.     While Defendant denies the validity of Plaintiff's claims and requests for relief, and does not concede in any way that the allegations in the First Amended Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the First Amended Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum.  *See Guglielmino*, 506 F.3d at 700.

19.     As described further below, as well as in the concurrently filed declaration from Andrea K. Cox,[3] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### 1.     Defendant's Estimate of the Amount in Controversy

20.     In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged:  (1) meal period violations; (2) rest break violations; (3) failure to provide accurate wage statements; (4) failure to timely pay all wages owed

---

[3] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

29323962_7.docx

upon termination; and (5) unpaid overtime wages for work performed in excess of 40 hours in one workweek or in excess of 8 hours in one day ("time-and-a-half overtime wages"). Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other allegations in the First Amended Complaint, including potential damages sought for the allegations of: (1) failure to pay minimum wages; (2) unfair, unlawful, and harmful business practices; and (3) Private Attorneys General Act penalties, as well as attorneys' fees associated with Plaintiff's allegations. Defendant has also based its removal calculations on current and former employees who held the Package Handler position, rather than the broader class proposed by Plaintiff. If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the First Amended Complaint.

a)     **The Amount Placed in Controversy by the Meal Period Claim Exceeds $5,000,000**

21.     In his Third Cause of Action, Plaintiff seeks to recover "damages in an amount equal to one (1) hour of wages at their effective hourly rates of pay for each meal period not provided or deficiently provided[.]" Ex. A, ¶ 42.

22.     Based on Defendant's records, the approximate number of current and former employees who held the non-exempt positions of Full-Time Package Handler or Part-Time Package Handler in California from four years prior to the filing of the Complaint to January 13, 2017 is 19,044.[4] Cox Decl., ¶ 9. The hourly rate of the putative class members was at least $8.00 per hour.[5] *Id.*

---

[4] Certain Part-Time Package Handlers and Full-Time Package Handlers in California may have been included in previous class action settlements, including *Aaron Rangel v.FedEx Ground Package System, Inc.*, *et al.*, C.D. Cal, No. 8:13-cv-01718-DOC(JCGx) (settlement entered April 8, 2015). Because these employees may have released claims that are asserted on their behalves in this litigation, Defendant has excluded from its calculations any periods that were covered by these previous settlements. Cox Decl., ¶ 10.

[5] From December 16, 2012 to June 30, 2014, the hourly rate of pay for putative class members was at least $8.00 per hour. Cox Decl., ¶ 11. From July 1, 2014 through December 31, 2015, the hourly rate of pay for putative class members was at least $9.00 per hour. *Id.* From January 1, 2016 through December 31, 2016, the hourly rate of pay for putative class members was at least

23.     Defendant's calculation of Plaintiff's claim for meal period violations is **$6,175,504** ($8 x 1 x 771,938).  The computation of the amount in controversy is based on conservative estimates that the 19,044 non-exempt Full-Time Package Handlers or Part-Time Package Handlers worked 771,938 weeks from December 16, 2012 to January 13, 2017, that each putative class member earned a regular rate of $8.00 per hour, and that each putative class member incurred one meal period violation for every week of work.[6]  Cox Decl., ¶¶ 9; 11.

24.     When determining the amount placed in controversy by a plaintiff's allegations regarding a common "practice" of meal period violations like those alleged by Plaintiff in the First Amended Complaint (*see, e.g.*, Ex. A, ¶¶ 8; 40-41), an estimate of one meal period violation for every week of work is both reasonable and conservative.  *See Campbell v. Vitran Exp., Inc.,* 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from the Northern District of California have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class member breaks."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's assumption that class members missed one required meal period per week).

25.     Consequently, the amount placed in controversy by the Meal Period Claim alone exceeds $5,000,000.

**b)     The Amount Placed in Controversy by the Rest Break Claim Exceeds $5,000,000**

26.     In his Fourth Cause of Action, Plaintiff avers that he "and other class members are entitled to damages in an amount equal to one (1) hour of wages at their effective hourly rates of

---

$10.00 per hour.  *Id.*  Since January 1, 2017, the hourly rate of pay for putative class members has been at least $10.50 per hour.  *Id.*  For purposes of these calculations, Defendant has conservatively used the lowest hourly rate of $8.00.

[6] In light of the First Amended Complaint's allegation that Defendant's purported meal period violations were extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action."  *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013).

29323962_7.docx

pay for each day worked without the required rest breaks[.]" Ex. A, ¶ 47.

27.     Defendant's calculation of Plaintiff's claim for rest break violations is **$6,175,504** ($8 x 1 x 771,938). The computation of the amount in controversy is based on conservative estimates that the 19,044 non-exempt Full-Time Package Handlers or Part-Time Package Handlers worked 771,938 weeks from December 16, 2012 to January 13, 2017, that each putative class member earned a regular rate of $8.00 per hour, and that each putative class member incurred one rest break violation for every week of work.[7]  Cox Decl., ¶¶ 9; 11.

28.     As with meal period violations, an estimate of one rest break violation per week of work is both reasonable and conservative where, as here, the plaintiff contends that there was a common and consistent "practice" of rest break violations.  *See, e.g.*, Ex. A, ¶¶ 9; 44; *Campbell,* 471 Fed. Appx. at 649; *Mackall*, 2016 WL 4579099, at *5; *Unutoa*, 2015 WL 898512, at *3.

29.     Consequently, the amount placed in controversy by the Rest Break Claim alone also exceeds $5,000,000.

### c)     The Amount Placed in Controversy by the Non-Compliant Wage Statements Exceeds $5,000,000

30.     In his Fifth Cause of Action, Plaintiff alleges that:

> Defendant[] failed to provide Plaintiff and other class members with accurate itemized wage statements in writing, as required by the Labor Code. Specifically, the wage statements given to Plaintiff and other class members by Defendant[] failed to account for unpaid wages and overtime, and premium pay for deficient meal periods and rest breaks, discussed above, all of which Defendant[] knew or reasonably should have known were owed to Plaintiff and other class members . . ..

Ex. A, ¶ 50.

31.     Plaintiff asserts that as a result of Defendant's alleged consistent failure to provide wage statements in compliance with California law, he and his putative class members are due "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation

---

[7] In light of the First Amended Complaint's allegation that Defendant's purported rest break violations were extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action."  *Altamirano*, 2013 WL 2950600, at *11.

occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."  Ex. A, ¶ 53.

32.     The statute of limitations for a claim for wage statement penalties under Labor Code Section 226(e) is one year.  Cal. Civ. Proc. Code § 340(a).

33.     Defendant's calculation of Plaintiff's claim for non-compliant wage statements is **$27,783,800**.  The computation of the amount in controversy is based on conservative estimates that Defendant issued at least 286,428 wage statements to non-exempt Full-Time Package Handlers or Part-Time Package Handlers between December 16, 2015 and January 13, 2017,[8] that there was one violation for each putative class member per pay period for which the employee was issued a paycheck during that statute of limitations period,[9] that the penalty for the first wage statement violation for each putative class member is $50, that the penalty for subsequent wage statement violations for each class member is $100, and that the aggregate penalty for each putative class member does not exceed $4,000.  Cox Decl., ¶¶ 12-13.

34.     An estimate of one wage statement violation for every pay period is reasonable, as the First Amended Complaint alleges that "[f]rom at least four (4) years prior to the filing of this lawsuit, and continuing to the present, Defendants have consistently failed to provide Plaintiff and other class members with timely, accurate, and itemized wage statements[.]"  Ex. A, ¶ 10.  In *Altamirano*, the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods.  2013 WL 2950600, at *11.

35.     Consequently, the amount placed in controversy by the Wage Statement Claim alone also exceeds $5,000,000.

---

[8] Package Handlers are paid on a weekly basis.  Cox Decl. ¶ 12.

[9] In light of the First Amended Complaint's allegation that Defendant's purported failure to provide compliant wage statements was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action."  *Altamirano*, 2013 WL 2950600, at *11.

29323962_7.docx

**d)** **The Amount Placed in Controversy by Plaintiff's Claim for Waiting Time Penalties for Failure to Pay All Wages Upon Termination Exceeds $5,000,000**

36.     In his Sixth Cause of Action, Plaintiff alleges that Defendant "failed to pay [terminated] class members all wages due and certain at the time of termination or within seventy-two (72) hours of resignation."  Ex. A, ¶ 56.  In addition, Plaintiff avers that "[t]he wages withheld from these class members by Defendant[] remained due and owing for more than thirty (30) days from the date of separation of employment," *id.* at ¶ 57, that Defendant's conduct "was willful," and that Plaintiff and the putative class members should receive "penalties under Labor Code § 203, which provides that an employee's wages shall continue until paid for up to thirty (30) days from the date they were due."  *Id.* at ¶ 58.

37.     Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month."  *Mamika v. Barca*, 68 Cal.App.4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."  *Id.* at 493.

38.     Here, Plaintiff's Section 203 claim is not premised only on the theory that Defendant failed to timely deliver final paychecks to terminated employees; rather, Plaintiff contends that Defendant owes penalties at least in part as a result of its "consistent policy of failing to pay *all wages* due and owed to Plaintiff and other class members at the time of their termination of within seventy-two (72) hours of their resignation, as required by California wage-and-hour laws."  Ex. A, ¶ 11 (emphasis added).  In light of the fact that, through his First Amended Complaint, Plaintiff is also seeking to recover alleged unpaid overtime wages and wages allegedly owed in lieu of providing meal and rest breaks, it is clear that Plaintiff's theory is that such alleged unpaid wages still have not been paid to Plaintiff and putative class members.  It is therefore reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate.  *See Quintana v. Claire's Stores, Inc.*, No.

13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants'

waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable

estimate of the potential value of the claims" where the complaint alleged that the defendants

"'regularly required'" putative class members to work off-the-clock without compensation, and the

defendants estimated that each putative class member "potentially suffered at least one violation

that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM,

2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to

assume, in light of the allegations in the complaint that members of the putative class "'routinely'"

missed meal periods, that "all members of the proposed class . . . would have missed a meal period

as described in the complaint at least once and were thus entitled to the waiting time penalty").

39.     Defendant's calculation of Plaintiff's claim for waiting time penalties for failure to

timely pay all wages upon termination is **$6,228,960** (30 x $8 x 2 x 12,977).  The computation of

the amount in controversy is based on conservative estimates that, from December 16, 2013 to

January 13, 2017,[10] approximately 12,977 non-exempt Full-Time Package Handlers or Part-Time

Package Handlers were separated from employment with Defendant, that each of these 12,977

putative class members is qualified to receive waiting time penalties,[11] that each putative class

member earned a regular rate of $8.00 per hour, and that a "day" for the purpose of the waiting

time penalty constitutes only two work hours.  Cox Decl., ¶¶ 11; 14.

40.     Consequently, the amount placed in controversy by the Waiting Time Penalties

Claim alone also exceeds $5,000,000.

e)     <u>**The Amount Placed in Controversy by the Time-and-a-Half**</u>
<u>**Overtime Wages Claim Exceeds $5,000,000**</u>

41.     In his Second Cause of Action, Plaintiff alleges that Defendant "fail[ed] to pay

Plaintiff and other class members time and one-half their regular rates of pay for hours worked in

---

[10] The statute of limitations for waiting time penalty claims pursuant to Section 203 is three years.
Cal. Code Civ. P. 338(a); *Pindeda v. Bank of Am.*, 50 Cal. 4th 1389 (2010).

[11] In light of the First Amended Complaint's allegation that Defendant's purported failure to timely
pay all wages due upon termination was extensive, "it is reasonable to assume a 100% violation
rate in calculating the amount in controversy for this cause of action."  *Altamirano*, 2013 WL
2950600, at *11.

29323962_7.docx

excess of eight (8) hours in a workday or in excess of forty (40) hours in any workweek." Ex. A, ¶ 34. Plaintiff claims that Defendant failed to pay time-and-a-half overtime wages because it "had a common policy of failing to pay Plaintiff and other class members for all hours worked, as required by California wage and hour laws." *Id*. at ¶ 35.

42.    Labor Code Section 1194(a) provides:

> "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

43.    Defendant's calculation of Plaintiff's claims for unpaid time-and-a-half overtime wages is $9,263,256 ($12 x 1 x 771,938). The computation of the amount in controversy is based on conservative estimates that the 19,044 non-exempt Full-Time Package Handlers or Part-Time Package Handlers worked 771,938 weeks from December 16, 2012 to January 13, 2017, that each putative class member earned a regular rate of $8.00 per hour, and that each putative class member incurred one hour of unpaid overtime for every week of work.[12]  Cox Decl., ¶¶ 9; 11.

44.    An estimate of one hour of unpaid overtime for every week of work has been accepted by the federal courts as a reasonable and conservative figure. *See Jasso v. Money Mart Express, Inc*., No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011). This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked overtime without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

45.    Consequently, the amount placed in controversy by the Overtime claim alone exceeds $5,000,000.

---

[12] In light of the First Amended Complaint's allegations that Defendant's purported failure to pay overtime wages was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11.

**f)**      <u>**Summary of Defendant's Calculations**</u>

46.      As described above, a reasonable and conservative estimate of the amount in controversy presented by *each* of Plaintiff's meal period, rest break, wage statement, waiting time penalty, and overtime claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III.      <u>DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS</u>

47.      <u>Venue is Proper</u>.  The Superior Court of California, County of Alameda, is located within the Northern District of California.  Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because the Northern District of California is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

48.      On April 12, 2017, Defendant filed an Answer to Plaintiff's First Amended Complaint in the Superior Court of California, County of Alameda.  A true and correct copy of the Answer is attached as **Exhibit C** to this Notice of Removal.  Chemers Decl., ¶ 4.

49.      As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders served on Defendant in this action.  True and correct copies of these documents are attached as **Exhibit D** to this Notice of Removal.  Defendant has not been served with any pleadings, process, or orders besides those attached.  Chemers Decl., ¶ 5.

50.      In accordance with 28 U.S.C. § 1446(d), Defendant will promptly give written notice to Plaintiff of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of Alameda.  Further, in accordance with Federal Rule of Civil Procedure 7.1 and Northern District of California Local Rule 3-15, Defendant concurrently files its Certification of Interested Entities or Persons and Disclosure Statement.

//

//

//

//

51.     Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.


DATED:  April 13, 2017                OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.



                                       By:  /s/ Alexander M. Chemers
                                            Betsy Johnson
                                            Evan R. Moses
                                            Alexander M. Chemers
                                            Y. Douglas Yang

                                       Attorneys for Defendant
                                       FEDEX GROUND PACKAGE SYSTEM, INC.