1  DAVID YEREMIAN & ASSOCIATES, INC.
   David Yeremian (SBN 226337)
2  david@yeremianlaw.com
   Alvin B. Lindsay (SBN 220236)
3  alvin@yeremianlaw.com
   535 N. Brand Blvd., Suite 705
4  Glendale, California 91203
   Telephone: (818) 230-8380
5  Facsimile: (818) 230-0308

6  Attorneys for Plaintiff STEVEN HERNANDEZ
   and the Settlement Class Members

7

8                  **UNITED STATES DISTRICT COURT**

9        **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

10

11  STEVEN HERNANDEZ, on behalf of        Case No.: 3:17-cv-02074-VC
    himself and others similarly situated,
12                                         CLASS ACTION
                    Plaintiff,
13                                         **NOTICE OF MOTION AND UNOPPOSED**
          vs.                              **MOTION FOR FINAL APPROVAL OF**
14                                         **CLASS ACTION SETTLEMENT;**
    FEDEX GROUND PACKAGE SYSTEM,           **MEMORANDUM OF POINTS AND**
15  INC., a Delaware corporation; and DOES 1  **AUTHORITIES IN SUPPORT THEREOF**
    through 50, inclusive,
16                                         [*Filed concurrently with Supporting Declarations*
                    Defendants.            *of Amanda Myette, David Yeremian, and Alvin B.*
17                                         *Lindsay; and [Proposed] Order and Judgment*]

18                                         Date:        September 26, 2019
                                           Time:        10:00 a.m.
19                                         Location:    Courtroom 4, 17th Floor
                                           Judge:       The Honorable Vincent G. Chhabria
20

21                                         Original Complaint Filed:    December 16, 2016
                                           First Amended Complaint:     February 21, 2017
22                                         Removed:                     April 13, 2017

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on **September 26, 2019**, at **10:00 a.m.** or as soon thereafter as counsel may be heard, in Courtroom 4 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, before the Honorable Vince Chhabria, Plaintiff Steven Hernandez ("Plaintiff"), on behalf of himself and the putative Settlement Class of similarly situated employees of Defendant FedEx Ground Package System, Inc. ("Defendant"), will and hereby does move this Court for final approval of the parties' Second Amended Stipulation of Settlement of Class Action and Release of Claims ("Settlement" or "Settlement Agreement"). A copy of the Settlement Agreement, which the Court preliminarily approved, was provided at ECF No. 70-1, and is provided for the Court's review at Exhibit A to Class Counsel Alvin B. Lindsay's concurrently filed Declaration in support of final approval.

This motion follows the Court's Order granting preliminary approval to the Settlement, entered on **May 10, 2019**. (ECF No. 72). The Administrator mailed the Court approved Class Notice to the Settlement Class Members on **July 1, 2019**, and the notice period closed on **August 26, 2019**. On **August 12, 2019**, Plaintiff also filed his Unopposed Motion for Attorneys' Fees and Costs and Class Representative Enhancement at Final Approval of Class Action Settlement ("Fees and Costs Motion") (ECF No. 75), requesting that the Court award Class Counsel reasonable attorneys' fees in connection with the final approval of the Settlement Agreement totalling $450,000.00, which is 25% of the Maximum Settlement Amount of $1.8 million, reasonable litigation costs of up to $20,000.00, and awarding Plaintiff $7,500.00 as a Class Representative Enhancement and Service Award for his dedicated efforts on behalf of the Class members.

Plaintiff now moves for final approval of the parties' Settlement Agreement, to be heard concurrently with Plaintiff's Fees and Costs Motion. Defendant does not oppose the Motion or the Fees and Costs Motion, or the requested awards pursuant to the Settlement Agreement.

Plaintiff brings this Motion in accordance with the Court's Order setting further administration dates and an amended schedule (ECF Nos. 72, 73, 74), and pursuant to the Court's authority to approve the Settlement upon finding that it is fair, reasonable, and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure. The proposed settlement is fair, adequate,

1  and reasonable and in the best interests of the Class as a whole. The procedures proposed by the

2  parties have been adequate to ensure the opportunity of Class members to participate in, opt out

3  of, or object to the Settlement, and it has been preliminarily approved. Settlement Administration

4  has been completed successfully, and the Settlement provides reasonable compensation to the

5  Class Members for their claims against Defendant.

6       Plaintiff requests entry of the concurrently provided [Proposed] Order and Judgment

7  granting final approval of the Settlement Agreement and awarding the Settlement Administrator,

8  Rust Consulting, Inc. ("Rust"), reasonable administration costs and fees of $135,000.00. The

9  Administration has been summarized and addressed by the Administrator in connection with the

10 Fees and Costs Motion (*see* ECF No. 75-9) and in the concurrently filed Declaration of Amanda

11 Myette of Rust in support of final approval. Plaintiff further requests that the Court approve the

12 requested attorneys' fees and costs and representative enhancement award, as addressed in the

13 Fees and Costs Motion documents.

14      Plaintiff respectfully submits good cause exists for granting the Motion for the reasons set

15 forth in the concurrently filed documents, and those submitted with the Fees and Costs Motion

16 (ECF Nos. 75 *et seq.*). This Motion is based upon this Notice of Motion and Unopposed Motion,

17 the Memorandum of Points and Authorities, and the Declarations of David Yeremian (Class

18 Counsel), Alvin B. Lindsay (Class Counsel), and Amanda Myette (Settlement Administrator),

19 along with the other documents filed herewith, including the Settlement Agreement and Notice

20 documents, any Exhibits to the Declarations, and the [Proposed] Order and Judgment, the other

21 pleadings and records on file in this action, and the presentations of counsel and such oral or

22 documentary evidence as may be presented at the hearing on this unopposed Motion.

23 DATED:  September 5, 2019              DAVID YEREMIAN & ASSOCIATES, INC.

24

25                                By /S/ Alvin B. Lindsay
                                    David Yeremian
26                                  Alvin B. Lindsay
                                    Attorneys for Plaintiff
27                                  STEVEN HERNANDEZ
                                    and the Settlement Class Members
28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## TABLE OF CONTENTS

2   I.      INTRODUCTION .................................................................................................. 1

3   II.     STATEMENT OF RELEVANT BACKGROUND FACTS .................................. 3

4       A.  Procedural History and Settlement Approval Proceedings .......................... 3

5       B.  Investigation and Mediation ......................................................................... 6

6       C.  Class Notice, Valuation, and Class Response .............................................. 7

7   III.    LEGAL AUTHORITY FOR FINAL APPROVAL .............................................. 8

8       A.  The Standard of Review ................................................................................ 8

9       B.  Relevant Ninth Circuit Considerations Favor Settlement Approval ............ 9

10          1.  Strength of Plaintiff's Case.................................................................. 11

11          2.  The Amount Offered in Settlement ..................................................... 12

12          3.  Risk, Expense, Complexity, and Likely Duration of Litigation ......... 13

13          4.  Risk of Maintaining a Class Action through Trial and Appeal ........... 14

14          5.  Extent of Discovery Completed and Stage of the Proceedings .......... 16

15          6.  Experience and Views of Counsel ...................................................... 16

16          7.  Presence of a Governmental Participant.............................................. 17

17          8.  Reaction of the Settlement Class Members to the Settlement............. 17

18          9.  Settlement Procedure .......................................................................... 20

19      C.  Approval of Attorneys' Fees, Costs, Representative Enhancement............... 20

20      D.  Final Certification for Settlement Purposes Is Appropriate ......................... 22

21      E.  Settlement Administration Costs Should Be Approved ................................ 23

22  IV.     CONCLUSION...................................................................................................... 24

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1                                **TABLE OF AUTHORITIES**

2   **Cases**

3   *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ................................................ 15

4   *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ...................................... 13, 17

5   *Churchill Vill., LLC v. Seattle,* 361 F.3d 566 (9th Cir. 2004) ........................................ 10

6   *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268 (9th Cir. 1992) ............................... 3, 8

7   *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) ............................................ 14

8   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................... 8

9   *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ........................... 9, 17

10   *Fecht v. Northern Telecom Ltd.*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) ...................... 14

11   *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) ...... 17

12   *Frlekin v. Apple, Inc.* 870 F.3d 867 (9th Cir. 2017) ............................................... 10, 11

13   *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)...................... 8

14   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... 9, 10

15   *Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir. 1986) ....................................... 15

16   *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991).......... 15

17   *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976). ............................... 17

18   *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................................... 9

19   *In re Omnivision Tech., Inc.,* 2008 WL 123936 (N.D. Cal. 2008).................................. 13

20   *In re PaineWebber Ltd. Pships. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)........................ 17

21   *In re Patriot Am. Hospitality, Inc. Sec. Litig,* 2005 U.S. Dist. LEXIS 40995 (N.D. Cal. 2005) .... 20

22   *In re Veritas Software Corp.*, 2005 U.S. Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005) ............. 13

23   *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y 1985)........................ 16, 18

24   *Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973) ....................................................... 11

25   *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)............................ 8

26   *Nelson v. Bennett*, 662 F. Supp. 1324 (E.D. Cal. 1987)............................................... 11

27   *Officers For Justice v. Civil Serv. Comm.*, 688 F.2d 615 (9th Cir. 1982)........................... 9

28   *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)........................................... 15

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 7973 (1985) ................................................................ 8

*Rangel v. FedEx Ground Package System, Inc.,* C.D. Cal, No. 8:13-cv-01718-DOC(JCGx) .... 7, 23

*Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ...................................................... 14

*See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209 (S.D.N.Y. 1992) ............................... 16

*Troester v. Starbucks Corp.,* 5 Cal. 5th 829 (2018) .............................................................. passim

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976) ...................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .......................................................... 2, 15

*West Virginia Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ......................................... 12

**Statutes**

28 U.S.C. § 1332(d)(2) ...................................................................................................................... 3

Business & Professions Code § 17200 *et seq.* ................................................................................. 3

Labor Code § 203 ............................................................................................................................... 3

Labor Code § 226(a) .......................................................................................................................... 3

Labor Code § 226.7 ............................................................................................................................ 3

Labor Code § 510 ............................................................................................................................... 3

Labor Code § 2699, *et seq.* ............................................................................................................... 3

Labor Code § 2802 ........................................................................................................................... 19

**Rules**

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 1, 8, 9

**Treatises**

4 Newberg on Class Action 4th (4th ed. 2002) ................................................................................ 3

Manual for Complex Litigation (Second) § 30.44 (1985) ............................................................... 20

Newberg & Conte, *Newberg On Class Actions* § 11.41 (3d ed. 1992) .......................................... 10

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Steven Hernandez ("Plaintiff"), on behalf of himself and the preliminarily approved Settlement Class of similarly situated employees of Defendant FedEx Ground Package System, Inc. ("Defendant"), respectfully requests entry of an Order granting final approval of the parties' Second Amended Stipulation of Settlement of Class Action and Release of Claims ("Settlement" or "Settlement Agreement"). A copy of the Settlement Agreement is provided for the Court's review and reference at Exhibit A to the concurrently filed Declaration of Alvin B. Lindsay (Class Counsel), and at ECF No. 70-1. This Motion will be heard concurrently with Plaintiff's Unopposed Motion for Attorneys' Fees and Costs and Class Representative Enhancement at Final Approval of Class Action Settlement ("Fees and Costs Motion") (ECF No. 75). Defendant does not oppose this Motion or the requested awards. (*See* concurrently filed Declaration of David Yeremian (Class Counsel) ("Yeremian Decl."), ¶ 6).

Plaintiff and Class Counsel have negotiated a Maximum Settlement Amount of one million, eight hundred thousand dollars (**$1,800,000.00**) for **55,156** Class members, and there are **55,120** Participating Class Members who have not requested exclusion. (*See* concurrently filed Declaration of Amanda Myette (Settlement Administrator) ("Myette Decl."), ¶¶ 8, 19, 16). The Settlement Agreement and its terms are addressed and summarized by Class Counsel. (Lindsay Decl., ¶¶ 41-51, Exhibit A).

On **May 10, 2019**, the Court entered its Order granting preliminary approval to the Settlement and authorizing mailing of the proposed Class Notice, and setting further administration and approval dates. (ECF No. 72). Class Notices were mailed on **July 1, 2019** to **55,156** Class members, and the deadline for objecting or requesting exclusion from the Settlement passed on **August 26, 2019**. (Myette Decl., ¶¶ 10, 16). Following completion of the notice period, Plaintiff now seeks final approval of the settlement and an award to Rust Consulting, Inc. of **$135,000.00** for the Settlement Administration costs and fees it has incurred to date. (Myette Decl., ¶ 22).

Plaintiff now asks the Court to grant final approval of the Settlement, award the requested fees, costs, and Class Representative Enhancement and Service Award, and order payments to the Class Members pursuant to the Settlement. As explained in further detail below and in the supporting Declarations, the Court should grant final approval because:

- The Settlement is fair, reasonable, and adequate.

- Plaintiff and Class Counsel have negotiated a Maximum Settlement Amount of **$1.8 million** for **55,156** employee Class members in connection with this non-reversionary Settlement. (Myette Decl., ¶¶ 8, 10, 16)

- **Two** Class members have objected to the settlement, and **36** Class members have opted out of the Settlement by requesting exclusion. (Myette Decl., ¶¶ 16-17).

- As a result of the claims administration, **55,120** Participating Class Members (i.e. a 99.93% participation rate) will receive a monetary payment from the Settlement. (Myette Decl., ¶ 19).

- Based on an estimated Net Settlement Fund of **$1,157,500.00**, the average Individual Settlement Payment the Class Members will receive is estimated to be approximately **$21.00**. The highest payment is estimated to be **$133.79**, and the lowest payment is estimated to be **$.06**. (Myette Decl., ¶ 19).

- The Amended Settlement amount of **$1.8 million** is **11.53%** of Class Counsel's estimated total liability exposure of **$15,615,025.74**. (Lindsay Decl., ¶ 39; *see also* ECF No. 64-1, ¶ 33).

These numbers are within the range of similar settlements for which final approval was granted. By resolving this matter now, these Class members will receive guaranteed recovery without risk of nonpayment, delay, or an adverse judgment at trial. The Settlement should receive final approval because it is fair, reasonable and adequate, as it appropriately accounts for the risks, challenges, and costs to both sides were the case to proceed. It factors in the risk that certification and certain defenses may succeed or fail in light of the United States Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). It sets a settlement amount that reflects a compromise between two strongly held positions. The Settlement also accounts for the exchange

1  of information in discovery. Also supporting approval is the recognition in the law favoring

2  settlement in class actions and other complex cases where substantial resources can be conserved

3  by avoiding the time, cost, and rigors of formal litigation. *See* 4 Newberg on Class Action 4th (4th

4  ed. 2002); *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst*

5  *v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). For these and other reasons set forth below,

6  Plaintiff respectfully requests that the Court grant final approval of the parties' Settlement.

7  **II.     STATEMENT OF RELEVANT BACKGROUND FACTS**

8      **A.     Procedural History and Settlement Approval Proceedings**

9      Plaintiff was employed as a non-exempt, hourly package handler at one of Defendant's

10  facilities in California. Class Counsel filed Plaintiff's Class Action Complaint on **December 16,**

11  **2016** in Alameda County Superior Court, and his First Amended Class Action Complaint on

12  **February 21, 2017**, alleging eight causes of action against Defendant: (1) failure to pay minimum

13  wages; (2) failure to pay wages and overtime under the California Labor Code § 510; (3) meal

14  period liability under California Labor Code § 226.7; (4) rest break liability under California

15  Labor Code § 226.7; (5) violation of California Labor Code § 226(a) for inaccurate wage

16  statements; (6) waiting time penalties for violation of California Labor Code § 203; (7) violation

17  of  California Business & Professions Code § 17200 *et seq.*; and (8) penalties pursuant to

18  California Labor Code § 2699, *et seq.* ("PAGA"). (Lindsay Decl., ¶ 10).

19      On **April 13, 2017**, Defendant removed this action to the Northern District of California

20  under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) and (d)(6). (ECF No. 1). After

21  multiple reassignments, the action was assigned to this honorable Court on **May 9, 2017**. (ECF

22  No. 17). The Court scheduled the parties' Initial Case Management Conference on **July 12, 2017**

23  (Docket No. 18), where the Court set case management dates. (ECF No. 28). (Lindsay Decl., ¶

24  11). The parties then began initial discovery for class certification purposes. (*Id*. at ¶¶ 12-14).

25      Class Counsel provides a detailed summary of all the procedure to and the actions counsel

26  have taken in this action for the Court's review and reference as desired. (Lindsay Decl., ¶¶ 3-40;

27  *see also* ECF No. 75-1, ¶¶ 3-46; ECF No. 75-2). Counsel also provides a detailed summary of the

28  Settlement Agreement and its terms. (Lindsay Decl., ¶¶ 41-51; *see also* ECF No. 75-1, ¶¶ 47-57).

Counsel further summarizes the liability exposure calculation methodologies utilized and how

increased settlement value was decided upon following the California Supreme Court's ruling in

*Troester v. Starbucks Corp*., 421 P.3d 1114 (Cal. 2018) ("*Troester*"). (Lindsay Decl., ¶¶ 30-32;

*see also*, ECF No. 64-1, ¶¶ 20-33; ECF No. 75-1, ¶ 41-45). The prior moving papers also provide

detail as to how the parties added and allocated Settlement value and the bases for doing so. This

supplemented and expanded upon the claim and potential liability exposure analysis Class

Counsel considered and Mr. Yeremian explained in the original motion for preliminary approval

filing. (*See* ECF No. 47-1, ¶¶  33-46, pages 9-14). Class Counsel has thus provided detailed

descriptions of the calculation methodology used to arrive at the increased settlement amount as

applied to each of the claims and the grounds for doing so in Mr. Lindsay's prior Declaration.

(Lindsay Decl., ¶¶ 30-40; *see also* ECF No. 64-1, ¶ 20-33). Rather than providing all these details

again, Class Counsel only provides further summary of the procedure and events which have led

to the preliminarily approved Second Amended Settlement Agreement.

On **June 12, 2018**, Plaintiff filed his original Motion for Preliminary Approval (ECF No.

47) of the parties' original Stipulation of Settlement of Class Action and Release of Claims.

(Exhibit A to prior Yeremian Decl., at ECF No. 47-2). Defendant filed its Statement of Non-

Opposition on **June 26, 2018** (ECF No. 48), and the parties' counsel appeared for the initial

hearing on **July 19, 2018**. (Lindsay Decl., ¶ 3). The Court heard the Motion on **July 19, 2018,**

where it asked the parties to file a first administrative motion providing revised versions of the

Class Notice and Proposed Order addressing the points the parties discussed with the Court at the

hearing, which then occurred on **July 26, 2018**. (ECF Nos. 49, 50, 51). The Notice was amended

to add further information, including regarding the case web-site, and the parties agreed that it

would be translated into Spanish and mailed to Class Members, but at an increased administration

cost. (ECF No. 51, pages 5-6). The Parties also agreed that the language of the Original Settlement

would be amended accordingly to reflect the changes in the Notice and Proposed Order. (*Id*. at

page 6; *see also* Lindsay Decl., ¶ 3).

A central issue to this action is the question of whether time undergoing security

screenings is *de minimis* and should not be compensated as hours worked under the federal

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   construct, which was addressed in *Troester*. (Lindsay Decl., ¶ 4). On **July 26, 2018**, the California

2   Supreme Court issued its ruling in *Troester v. Starbucks Corp.,* 5 Cal. 5th 829 (2018), and Plaintiff

3   filed a Statement of Recent Decision with the Court. (ECF No. 52). The Court then asked for

4   briefing regarding *Troester* and its impact on the Settlement, which the parties provided. (ECF

5   Nos. 53, 54). On **August 22, 2018**, the Court then denied the original Motion for a **$1.1 million**

6   maximum settlement amount as unreasonable based on its concerns relating to *Troester* and the

7   parties decision not to provide a Spanish notice to the proposed Class members. (ECF No. 55;

8   Lindsay Decl., ¶ 4).

9       The parties then proposed further case management dates taking the case through trial, and

10  asked for time to continue to attempt to arrive at an amicable resolution. (ECF Nos. 56-60). In an

11  effort to address the Court's concerns, the parties conducted a second mediation in December of

12  2018, ultimately arriving at an increased Settlement amount of $1.8 million, and they filed a

13  Notice of Settlement on **January 9, 2019**. (ECF No. 62; Lindsay Decl., ¶ 5). Plaintiff then field a

14  second motion for preliminary approval (ECF No. 64) of the Parties' Amended Joint Stipulation of

15  Settlement of Class Action and Release of Claims ("Amended Settlement") and an Amended

16  Class Notice (to be provided in both English and Spanish to the proposed Class members). (*See*

17  Amended Settlement, at Exhibit A to Suppl. Lindsay Decl., at ECF No. 64-2; Amended Class

18  Notice, at Exhibit B to Suppl. Lindsay Decl., at ECF No. 64-3; Lindsay Decl., ¶ 5).

19      The Court rescheduled the preliminary approval hearing for **May 2, 2019** (ECF No. 65),

20  and prior to the hearing issued a Minute Order asking the parties' counsel to address items at the

21  hearing. (ECF No. 66). On **May 2, 2019**, the parties' counsel addressed the Court's points.

22  (Lindsay Decl., ¶ 6). Following further presentation from counsel, the Court then provided the

23  parties with required revisions to the Settlement Agreement, the Class Notice, and the [Proposed]

24  Order that would place the Settlement in position for preliminary approval. (ECF No. 69). The

25  Court also set a Final Approval and Fairness hearing for **August 8, 2019** at 10:00 a.m., and asked

26  the parties to file the revised settlement documents by **May 7, 2019**. (*Id*.).

27      Plaintiff's Counsel then worked with Defendant's counsel to agree to further required

28  Settlement amendments and further revisions to the Notice, and then on **May 7, 2019**, Plaintiff's

counsel filed a Declaration providing the required amendments. (*See* prior Lindsay Decl. at ECF No. 70; Second Amended Settlement Agreement at Exhibit A thereto (ECF No. 70-1) and further Amended Class Notice at Exhibit B thereto (ECF No. 70-2); *see also* Lindsay Decl., ¶ 7). On **May 10, 2019**, the Court entered its Order granting preliminary approval to the Second Amended Settlement and authorizing mailing of the proposed Class Notice, and setting further administration and approval dates. (ECF No. 72). On **June 13, 2019**, the parties submitted a stipulation to modify the schedule (ECF No. 73), which the Court granted in its Modified Order. (ECF No. 74). This included the present deadline to file the Fees and Costs Motion, an objection and exclusion deadline of **August 26, 2019,** and a Final approval hearing on **September 26, 2019**. (*Id.* at page 2). The schedule also includes a **September 5, 2019** deadline for Plaintiff to file the motion for final approval of the Second Amended Settlement Agreement. (Lindsay Decl., ¶ 7).

### B.    <u>Investigation and Mediation</u>

The original complaints were based upon substantial pre-filing research, both factual and legal. Prior to filing suit, Class Counsel interviewed Plaintiff at length regarding his claims and those of the putative Class. Class Counsel's initial investigation painted a picture of the conditions under which Plaintiff and his fellow co-workers worked. Counsel also completed informal and formal discovery and were in possession of the documents and data necessary for estimating liability exposure at the mediation, and Class Counsel provides a detailed summary of the discovery and investigation that the parties relied upon for conducting multiple mediation sessions. (Lindsay Decl., ¶¶ 12-14; *see also* ECF No. 75-1, at ¶¶ 12-25).

Finding that their respective interests were best served by compromise, the parties agreed to mediate after conducting the above described discovery and investigation, and did so on **December 13, 2017**, and then again on **December 4, 2018**, with well-respected wage and hour mediator, Lou Marlin, Esq., in Los Angeles, California. (Lindsay Decl., ¶¶ 14, 16-17, 29-32, 39, 68). After two full days of substantial negotiations, the parties were able to reach memorandums of agreement which formed the basis for their original, amended, and Second Amended Settlement Agreement. At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length (Lindsay Decl., Exhibit A, Settlement, ¶ 3.H.), while recognizing the

1    uncertainty, risk, expense, and delay attendant to continuing the action through trial and any

2    appeals. (*Id.* at Settlement, ¶ 3.I.; *see also* Lindsay Decl., ¶¶ 9, 23-28, 39; Yeremian Decl., ¶ 20;

3    ECF No. 75-3, ¶¶ 35, 36, 40, 42-47).

4        C.    **Class Notice, Valuation, and Class Response**

5        The details of the Settlement terms are addressed and summarized by Class counsel. (*See*

6    Lindsay Decl., ¶¶ 41-51; ECF No. 75-1, ¶¶ 47-57). The prior moving papers also provide further

7    details as to how the parties added and allocated Settlement value and the bases for doing so.

8    (Lindsay Decl., ¶ 32; ECF No. 64-1, ¶ 20-33). This supplemented and expanded upon the claim

9    and potential liability exposure analysis Class Counsel considered and Mr. Yeremian explained in

10    the original motion for preliminary approval filing. (*See* ECF No. 47-1, ¶ 33-46, pages 9-14).

11        Mr. Lindsay provided further detailed descriptions of the calculation methodology used to

12    arrive at the increased settlement amount as applied to each of the claims and the grounds for

13    doing so in in his prior Declaration. (Lindsay Decl., ¶ 38; ECF No. 64-1, ¶ 20-33). To summarize,

14    the Amended Settlement's Maximum Settlement Fund of $1.8 million is a **63%** increase of the

15    $1.1 million from the original Settlement. (Lindsay Decl., ¶ 39). The amount allocated to wage

16    claims has increased from 9.6% total estimated liability exposure (as of the first mediation and

17    prior to *Troester*) to 15% (as of the second mediation and after *Troester*). The Amended

18    Settlement amount of $1.8 million is **11.53%** of Class Counsel's estimated total liability exposure

19    of **$15,615,025.74**. (ECF No. 64-1, ¶ 33; Lindsay Decl., ¶ 39). Plaintiff submits this number is fair

20    and reasonable in light of the risk of no recovery following protracted litigation, Defendant's

21    policies and record of compliance, including following the settlement in *Rangel v. FedEx Ground*

22    *Package System, Inc., et al.,* C.D. Cal, No. 8:13-cv-01718-DOC(JCGx) ("*Rangel*") (Lindsay

23    Decl., ¶¶ 14, 19-22, 35-37, 43, 46, 49), and for all the reasons addressed in the Motion and

24    supporting documents. The Court has preliminarily approved the Settlement after reviewing

25    Plaintiff's methodology and potential estimated liability calculations. (ECF No. 72).

26        The Settlement Administrator has provided a Declaration in support of the present Motion

27    addressing the procedures followed for compiling the Class List and sending the Class Notice to

28    the members of the Class. (*See* Myette Decl., ¶ 7-10). The Settlement Administrator reports that

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   the Class Information provided to it from Defendant contained data establishing there are now

2   **55,156** total Class Members. (Myette Decl., ¶ 9; Lindsay Decl., ¶ 41). The accompanying Myette

3   Declaration provides details of the Settlement Administration conducted to date. (Myette Decl., ¶

4   3-22). Court approved Class Notices were sent, in both English and Spanish translations, by Rust

5   Consulting on **July 1, 2019** to **55,156** Class Members. (*Id*. at ¶ 10). There are 755 undeliverable

6   Class Notices and there have been zero self-identifying Class Members. (*Id*. at ¶ 12, 15). The

7   Settlement Administrator has received **36** requests for exclusion thus far, and **two** objections. (*Id*.

8   at ¶¶ 16-17). Given the present number of **55,120** Participating Class Members, and pursuant to

9   the Settlement, the average Individual Settlement Payment to the Class Members is estimated to

10  be approximately **$21.00**. The highest payment is estimated to be **$133.79**, and the lowest payment

11  is estimated to be **$.06**. (*Id*. at ¶ 19; *see also* Lindsay Decl., ¶ 9).

12          Plaintiff submits the notice and claims process has been successful and complied with

13  constitutional due process. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985)

14  (holding that "a fully descriptive notice [that] is sent [by] first-class mail to each class member,

15  with an explanation of the right to 'opt out,' satisfies due process"); *Grunin v. International House*

16  *of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (holding that "individualized notice by mail to the

17  last known address [is] the 'best notice practicable' in a class action contest"), *cert. denied*, 423

18  U.S. 864, 96 S. Ct. 124, 46 L. Ed. 2d 93 (1975), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S.

19  156, 174-77 (1974).

20  **III.      LEGAL AUTHORITY FOR FINAL APPROVAL**

21          **A.      The Standard of Review**

22          Under Rule 23(e) of the Federal Rules of Civil Procedure, "A class action shall not be

23  dismissed or compromised without the approval of the court, and notice of the proposed dismissal

24  or compromise shall be given to all members of the class . . ." In deciding whether to approve a

25  proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements,

26  particularly where complex class action litigation is concerned." *See Linney v. Cellular Alaska*

27  *Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d

28  1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992). Therefore, in making its assessment

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   pursuant to Rule 23(e), the Court's evaluation of what is otherwise "a private consensual

2   agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to

3   reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

4   collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

5   reasonable, and adequate to all concerned." *Officers For Justice v. Civil Serv. Comm.*, 688 F.2d

6   615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also In re Mego Fin. Corp. Sec.*

7   *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

8   1998).

9         A settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor

10   should the proposed settlement "be judged against a hypothetical or speculative measure of what

11   might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. To the

12   contrary, the involvement of experienced class action counsel and the fact that the settlement

13   agreement was reached in arms' length negotiations, after relevant discovery had taken place,

14   create a presumption that the agreement is fair. *See, Ellis v. Naval Air Rework Facility*, 87 F.R.D.

15   15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

16         As explained above, the settlement was reached through informed negotiation by

17   experienced counsel on both sides, and after extensive investigation, informal discovery,

18   amendment of the complaint, mediations with an experienced and respected wage and hour

19   mediator, and conferences regarding exact terms and conditions of the settlement and notice. (*See*

20   Lindsay Decl., ¶¶ 12-17, 23-34). The mediator's efforts in the mediations also ensured the

21   interests of the Class Members were adequately protected. Under these circumstances, the

22   settlement should be afforded a presumption of fairness.

23         **B.      Relevant Ninth Circuit Considerations Favor Settlement Approval**

24         A court can approve a class action settlement that binds class members "only after a

25   hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A

26   presumption of fairness exists where: (1) the settlement is reached through arms-length bargaining;

27   (2) investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3)

28

1    counsel is experienced in similar litigation; and (4) the percentage of objections is small.  Newberg

2    & Conte, *Newberg On Class Actions* (3d ed. 1992), § 11.41, pp. 11-91.

3        The Ninth Circuit has explained that courts should consider "some or all" of the following

4    factors in determining whether a proposed settlement is fair, reasonable, and adequate:  (1) the

5    strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

6    litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

7    in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

8    experience and views of counsel; (7) the presence of a governmental participant; and (8) the

9    reaction of the class members to the proposed settlement. *Churchill Village v. General Electric*,

10   361 F.3d 566, 575-576 (9th Cir. 2004), *cert. denied*, 543 U.S. 818 (2004), citing *Hanlon*, 150 F.3d

11   at 1026; *see also Linney*, 151 F.3d at 1242. One factor alone may prove determinative. *Id.*

12   Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., LLC v. Seattle,* 361 F.3d

13   566, 576 (9th Cir. 2004) (omission and quotation marks omitted*) (*quoting *Churchill Vill., L.L.C. v.*

14   *Gen. Elec.*, 361 F.3d at 576).

15       The relevant *Churchill* factors weigh in favor of final approval. Here, the risk, expense,

16   complexity, and likely duration of further litigation, as well as the risk of maintaining class action

17   status throughout the trial, were high. Defendant would have contested class certification by

18   arguing that individualized issues predominate and by contesting typicality and manageability.

19   (Lindsay Decl., ¶ 15, 24-28, 39; Yeremian Decl., ¶ 20; ECF No. 75-3, ¶¶ 42-47). This is a complex

20   class action case, and establishing liability and proving the amount of damages sustained would be

21   risky, especially in view of any differences between the security screening procedures at the

22   different facilities. (*See, e.g*., ECF No. 47-1, ¶ 46(d)). For example, Defendant maintained that the

23   time to pass through security screening was still *de minimis* even under *Troester*, and California

24   Supreme Court may also provide salient guidance at some future point in time regarding security

25   screening claims in *Frlekin v. Apple, Inc.* (9th Cir. 2017) 870 F.3d 867 ("*Frlekin*"). (Lindsay Decl.,

26   ¶¶ 15, 39). The California Supreme Court has agreed to decide the following question in *Frlekin*,

27   certified to it by the Ninth Circuit: "Is time spent on the employer's premises waiting for, and

28   undergoing, required exit searches of packages or bags voluntarily brought to work purely for

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    personal convenience by employees compensable as "hours worked" within the meaning of

2    California Industrial Welfare Commission Wage Order No. 7?"  *Id.* at 869.  The pending status of

3    this issue before the California Supreme Court provided risk to both Defendant and Plaintiff and the

4    Class. (Lindsay Decl., ¶ 15, 39). Defendant also argued that its liability exposure was limited due to

5    the nature of the workforce, with the employee Class members typically working shifts of less than

6    five hours total. (*See, e.g*., ECF No. 47, average shift time of 4.7 hours). Defendant therefore argued

7    that the putative class members are typically either not entitled to meal periods (if they work 5 or

8    fewer hours) or are entitled to waive their meal periods (if they work more than 5 hours but not

9    more than 6 hours), and may be entitled to only one (and possibly no) rest breaks in a given day.

10    (Lindsay Decl., ¶ 15).

## 1.    Strength of Plaintiff's Case

12    In evaluating a settlement in this type of complex litigation, courts have long recognized

13    that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D.

14    525, 528 (S.D.N.Y. 1973) (footnote omitted.). Thus, compromise is particularly appropriate. *Nelson*

15    *v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). The strengths and risks associated with

16    Plaintiff's claims are addressed by Class Counsel. (Lindsay Decl., ¶¶ 9, 15, 27, 39; Yeremian Decl.,

17    ¶ 20; ECF No. 75-3, ¶¶ 42-47; *see also*, ECF No. 47-1, ¶ 46(d)). Plaintiff's arguments as to how to

18    value the claims and Defendant's arguments against specific claims have also been summarized by

19    Class Counsel in connection with addressing the value assigned to the claims. (Lindsay Decl., ¶¶

20    12-34; *see also* ECF No. 47-1, ¶¶ 33-46; ECF No. 64-1, ¶¶ 20-33; ECF No. 75-1, at ¶¶ 12-25).

21    To succeed at trial, Plaintiff would have to prevail on each and every element of his claims.

22    There are significant legal uncertainties associated with unlawful policy claims and wage claims

23    regarding time Defendant argued was *de minimis* time. Differing opinions on how *Troester* applies

24    to the facts of this action and how the California Supreme Court will rule in *Frlekin* presented

25    further risk that Plaintiff and the Class might recover nothing on their claims, or they would be

26    greatly narrowed through unnecessary contested discovery motion practice. (Lindsay Decl., ¶¶ 15,

27    27). Defendant also argued that differences in the security screening procedures at the various

28    facilities and the individualized specifics of the Class members' differing potential claims

1    compelled a conclusion that individualized questions predominated and the class-wide claims were

2    unmanageable. (Lindsay Decl., ¶¶ 15, 57-70; Yeremian Decl., ¶ 20; ECF No. 75-3, ¶¶ 42-47).

3           In sum, while Plaintiff believes he has arguments and evidence to counter each one of

4    Defendant's positions, there is no guarantee that the Court or jury would agree. *See West Virginia*

5    *Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("it is known from past experience

6    that no matter how confident one may be of the outcome of litigation, such confidence is often

7    misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871 (1971).

8                        **2.      The Amount Offered in Settlement**

9           The Amended Settlement's Maximum Settlement Fund of **$1.8 million** is a **63%** increase to

10   the $1.1 million from the original Settlement. The amount allocated to wage claims has increased

11   from 9.6% total estimated liability exposure (as of the first mediation and prior to *Troester*) to **15%**

12   (as of the second mediation and after *Troester*). The Amended Settlement amount of **$1.8 million** is

13   **11.53%** of Class Counsel's estimated total liability exposure of **$15,615,025.74**, which Class

14   Counsel submits is an excellent result for the Class members given the nature of the claims and

15   Defendant's policies and practices. (Lindsay Decl., ¶ 39; *see also* ECF No. 64-1, ¶ 33).

16          Court approved Class Notices were sent, in both English and Spanish translations, by Rust

17   Consulting on **July 1, 2019** to **55,156** Class Members. (Myette Decl., ¶ 10). The Settlement

18   Administrator has received **36** requests for exclusion and **two** objections. (*Id*. at ¶¶ 16-17). **Two**

19   objectors out of **55,156** Class members is a negligible objection rate of **0.0036%**. If all allocations

20   from the Settlement are approved by the Court, the Net Settlement Fund to be distributed in its

21   entirety to the Participating Class Members is estimated at **$1,157,500**. (Myette Decl., ¶¶ 18-19).

22   Given the present number of **55,125** Participating Class Members, which is a **99.94%** participation

23   rate, and pursuant to the Settlement, the average Individual Settlement Payment to the Class

24   Members is estimated to be approximately **$21.00**. The highest payment is estimated to be **$133.79**,

25   and the lowest payment is estimated to be **$.06**. (*Id*. at ¶ 19). This represents a substantial and real

26   recovery that is well-within the range of an acceptable Settlement worthy of preliminary approval

27   under Rule 23.

28

1    Plaintiff submits the Settlement value of **$1.8 million**, in light of the above numbers, is fair

2    and reasonable in light of the risk of no recovery following protracted litigation, Defendant's

3    policies and record of compliance following prior litigations, and for all the reasons addressed in

4    this Motion and the prior Preliminary Approval and Fees and Costs Motions and supporting

5    documents. Based on the numerous risks and unresolved questions of law associated with

6    continuing to litigate this case, it is in the best interests of the Settlement Classes to receive a certain

7    and substantial award. Courts in the Ninth Circuit have observed: "simply because a settlement may

8    amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate.

9    Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D.

10   Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal.

11   2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts

12   to only a fraction of the potential recovery"); *see e.g.*, *In re Omnivision Tech., Inc.,* 2008 WL

13   123936 (N.D. Cal. 2008) ($13.75 million settlement approved despite over $151.8 million estimate

14   of damages through trial). The settlement here is significantly more than a "fraction" and in fact

15   provides a reasonable recovery when considering the associated risk factors involved. The

16   Settlement amount is fair and reasonable in light of the uncertainties associated with continued

17   litigation.

18                      **3.      Risk, Expense, Complexity, and Likely Duration of Litigation**

19   If there was no settlement and Plaintiff proceeded through Class certification, expert

20   discovery and trial preparation would be expensive and complex. While certainly attainable from

21   Plaintiff's perspective, victory in such a complex trial is hardly assured. Even if Plaintiff prevailed

22   in establishing liability, which Defendant would vigorously contest on many grounds, including

23   federal preemption, additional risks would remain in establishing the amount of damages sustained

24   by the class. *See In re Veritas Software Corp. Sec. Litig.* 2005 U.S. Dist. LEXIS 30880 at *14-15

25   (N.D. Cal. Nov. 15, 2005) (challenges in proving damages and other litigation risks supported

26   approval of settlement).

27   While Defendant has agreed to settle the action, if this case were to proceed, Defendant

28   would continue to assert defenses against liability and as to class certification. Therefore, while

1  Plaintiff believes the claims are meritorious and the Class would be able to establish liability,

2  Plaintiff recognizes the uncertainties of trial and the risks inherent in establishing liability in a

3  complex case of this nature.

4      By approving the Settlement, the Court can guarantee recovery for each of the **55,125**

5  Participating Class Members without having the Class face the risk of trial and a possible appeal. If

6  this case were to proceed to trial, the parties would have to expend thousands of additional hours in

7  attorney time, and spend much more in costs. Expenses incurred for a trial would severely deplete

8  any eventual recovery. Further, post-trial motions and appeals could force class members to wait

9  many more years for any recovery, further reducing its value. Consequently, resolution of this case

10  before trial will substantially and meaningfully benefit the Settlement Class, while reasonably

11  accounting for the risks associated with a protracted litigation.

12      Consistent with the foregoing, it would be grossly inefficient for the Class of current and

13  former employees to bring individual actions to recover from Defendant for its alleged labor law

14  violations. Moreover, the potential recovery to each individual class member is likely not high

15  enough to provide them with the incentive to sue individually. For example, the highest estimated

16  award here is approximately **$134** (Myette Decl., ¶ 19), which would have been insufficient to

17  cover the expenses of bringing an individual action or to generate sufficient funds for reasonable

18  fees. By granting final approval of the Settlement, the Court can eliminate all risks and provide

19  participating Settlement Class members with a certain recovery.

20      **4.    Risk of Maintaining a Class Action through Trial and Appeal**

21      Maintaining a class action is an expensive and risky enterprise. In addition to the thousands

22  of hours of time and money spent, with no hope of remuneration until and unless there is either a

23  settlement or a judgment, there is also the ever-present possibility that any victory attained by a

24  plaintiff can be overturned. *See, e.g., Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd.*

25  *Sec. Litig.)*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of

26  litigation); *Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81

27  million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and

28  judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)

1   (affirming the lower court's granting of summary judgment in favor of defendants); *In re Apple*

2   *Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury

3   verdict against two individual defendants, but district court vacated judgment on motion for

4   judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)

5   (where the class won a substantial jury verdict and a motion for judgment notwithstanding the

6   verdict was denied; however, on appeal, the judgment was reversed and the case dismissed – after

7   11 years of litigation).

8           Although the Class has been certified at this time for purposes of settlement, there is no

9   assurance that it would continue to remain certified. "A district court has a duty to assure that a

10  class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco Oil*

11  *Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999), citing *Hervey v. City of Little Rock*, 787 F.2d 1223,

12  1227 (8th Cir. 1986). Should this Court not finally approve the Settlement, Plaintiff would need

13  to prevail upon his motion for class certification, which Defendant would vigorously oppose.

14  Additionally, the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541

15  (2011) substantially undermines Plaintiff's ability to certify a class action. Plaintiff must

16  affirmatively demonstrate both that common questions of law and fact exist and that the

17  methodology utilized for showing harm on a class-wide basis actually works, and Class Counsel

18  addresses the risks it faced.  (Lindsay Decl., ¶¶ 15, 24-28, 39; Yeremian Decl., ¶ 20; ECF No. 75-

19  3, ¶¶ 42-47; *see also*, ECF No. 47-1, ¶ 46(d)). Defendant also believes *Dukes* forecloses "trials by

20  formula," finding that this methodology violates its due process rights because it does not allow

21  defendants to challenge and rebut any claims inevitably resulting in payment to persons not

22  damaged, and it poses issues. Federal courts have cited *Dukes* to deny class certification and to

23  decertify cases.

24          Settlement at this time will avoid this uncertainty, and additional substantial costs, such as

25  those that have already been incurred by both Parties, and will avoid the delay and risks that

26  would be presented by the further prosecution of this litigation. The instant settlement eliminates

27  these risks.

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**5.    Extent of Discovery Completed and Stage of the Proceedings**

The extent of evidentiary review completed and the stage of the proceedings bear on whether settlement should be approved. Courts look to whether investigation of the facts and evidence is sufficient to allow counsel and the court to act intelligently. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y 1985), *aff'd* (2d Cir. 1986).

The extensive discovery and investigation clearly allowed both parties to assess their relative positions and come to the conclusion, based on the analysis of the information, that settlement at this stage of the litigation was proper and that the settlement terms and amount were fair, adequate and reasonable. (Lindsay Decl., ¶¶ 12-14, 17, 21; ECF No. 75-1, ¶¶ 12-25). Counsel also completed informal and formal discovery and were in possession of the documents and data necessary for estimating liability exposure at the mediations. (*Id.*; *see also* Lindsay Decl., ¶¶ 5, 16, 27-32).

By the time the settlement was reached, the action had proceeded to the point where both Plaintiff and Defendant had "a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. at 745. At the time the Parties mediated the action, Plaintiff had been litigating the action for many months and had conducted extensive informal investigation and retained an expert to review data and employment practices. Accordingly, the stage of the proceedings, and the amount of the discovery completed, strongly favor approval of the Settlement. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213-14 (S.D.N.Y. 1992).

**6.    Experience and Views of Counsel**

The Settlement is the product of arms-length negotiations conducted by capable counsel who are experienced in class action litigation and have invested many hours, and the assistance of an experienced wage and hour class action mediator. (Yeremian Decl., ¶¶ 4-5, 8-12; ECF No. 31-2, ¶¶ 3-9; ECF No. 75-3, ¶¶ 4-10, 18-41; Lindsay Decl., ¶ 9, 53-56; ECF No. 75-1, ¶¶ 61-70). Defendant is represented by very skilled and capable counsel from a top-tier law firm. (Yeremian Decl., ¶ 6).

Having conducted extensive informal investigation and discovery in this case and having assessed the risks of continued litigation, it is the view of Class Counsel that the settlement appropriately reflects the relative strengths of the parties' respective claims and defenses, as well as the substantial risk presented in continuing the litigation, while recognizing the uncertainty, risk, expense, and delay attendant to continuing the action through trial and any appeals. (Lindsay Decl., Exhibit A, Settlement, ¶¶ 3.H. 3.I.; *see also* Lindsay Decl., ¶¶ 9, 15, 24-28, 39; Yeremian Decl., ¶ 20; ECF No. 75-3, ¶¶ 35, 36, 40, 42-47; ECF No. 47-1, ¶ 46(d)). Such recommendations should lend a presumption of reasonableness to the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 (the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to considerable weight"). Moreover, "[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976).

### 7.    Presence of a Governmental Participant

Pursuant to California Labor Code §§ 2698 - 2699.5, Plaintiff's counsel has notified the Labor Workforce Development Agency ("LWDA") of the Settlement and Amended Settlement and the PAGA claim and payment, and the final approval hearing. (Lindsay Decl., ¶ 8). Thus, governmental agencies such as the LWDA will have the opportunity to weigh in on the proposed Settlement should they believe it unfair in any respect. This process has helped to ensure that the interests of the Settlement Class are protected, and confirms the reasonableness of the Settlement.

### 8.    Reaction of the Settlement Class Members to the Settlement

"A favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *In re PaineWebber Ltd. Pships. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, **55,120** Class Members out of **55,156** in the Settlement Class have all become Participating Class Members, as there **36** requests for exclusion and **two** objectors. (Myette Decl., ¶¶ 8-10, 16-17). This demonstrates a "favorable reception" by class members to the settlement. In fact, "the absence of objectants [sic] may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp.

1    682, 684 (S.D.N.Y. 1988); *see also In re Warner Communications Sec. Litig.*, 618 F. Supp. at 746

2    (noting that two objections to settlement was very low); *Milstein v. Huck*, 600 F. Supp. 254, 267

3    (E.D.N.Y. 1984) (explaining that the reaction of the class was "overwhelmingly favorable" because

4    no objections to the settlement had been filed). Accordingly, this factor of the test is satisfied and

5    supports final approval of the Settlement.

6         The Settlement has been well-received by the Class members. The Settlement Administrator

7    has received **36** requests for exclusion and **two** objections. (Myette Decl., ¶¶ 16-17). **Two** objectors

8    out of **55,156** Class members is a negligible objection rate of **0.0036%**. If all allocations from the

9    Settlement are approved by the Court, the Net Settlement Fund to be distributed in its entirety to the

10   **55,120** Participating Class Members is estimated at **$1,157,500**. (Myette Decl., ¶¶ 18-19). Given the

11   present number of **55,120** Participating Class Members, the Class members have responded with a

12   **99.93%** participation rate.

13        The first objection, from Daniel Lowry, was filed with the Court on **August 12, 2019**. (ECF

14   No. 76). The second, from Maria Espinosa Avalos, was filed with the Court on **August 29, 2019**

15   (ECF No. 77). (Lindsay Decl., ¶ 57). Neither Mr. Lowry nor Ms. Avalos were one of the 36 Class

16   Members who requested exclusion from the Settlement. (Myette Decl., ¶ 17). Class Counsel

17   provides a detailed response to these objections which the Parties' request the Court consider in

18   determining to overrule the objections at the final approval hearing. (Lindsay Decl., ¶¶ 57-70).

19        As Class Counsel explains in the accompanying declaration, the Avalos objection (ECF No.

20   77) should be overruled on the following grounds: (1) She concedes she was generally provided rest

21   breaks; (2) she complains that *on a single occasion* she did not take a second rest break; (3) She

22   does not allege that she was denied the opportunity to take a rest break, instead she complains that

23   she forgot to take one because she was not allowed to access her cell phone while working; (4) She

24   misapprehends the law by stating that Defendant's supervisor was supposed to ensure that she

25   received a rest break, when an employer need only authorize and permit breaks; (5) The fact that no

26   other Class members objected on grounds similar to those raised by Ms. Avalos highlights that her

27   objection relates to an isolated and individualized circumstance, and not any systemic flaw in her

28   employer's policies or practices; (5) She was informed in the Notice that the Court can only

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    approve or deny approval of the Settlement, and cannot change its terms to cover the rest break

2    claim as she alleges; and (6) If Ms. Avalos wanted to be compensated for more breaks or at a

3    greater amount than the other Class members, then her appropriate course would have been to

4    request exclusion and bring individual claims against Defendant. (Lindsay Decl., ¶¶ 58-60).

5         Similarly, Mr. Lowry's objection (ECF No. 76) should be overruled on the following

6    grounds: (1) His allegations are isolated and he does not attack the fairness of the Settlement as a

7    whole, and instead simply contends he should be awarded more money (i.e. "several thousands" of

8    dollars); (2) He is not arguing that the amount of Settlement funds allocated to rest break claims is

9    inadequate; (3) He instead argues that he expended "thousands or several thousands of dollars" in

10   purchasing new "underpants and trousers," presumably from soiling himself due to no alleged

11   breaks, for which he should be reimbursed; (4) His claim appears to be one for unreimbursed

12   expenses under <u>Labor Code</u> § 2802 rather than a rest break claim; (5) Reimbursement claims were

13   not part of this lawsuit, and are not covered by the release of claims negotiated as part of this

14   Settlement; (5) If Mr. Lowry was truly subject to the working conditions he alleges, he should have

15   requested exclusion from the settlement and sought individual remedies for his individualized

16   claims against Defendant particular to him, but he elected not to do so; (6) The Parties (and the

17   Court) went through several rounds of negotiation to ensure that the amount earmarked to each

18   individual claim covered by the release was fair to the Class as a whole, including the rest break

19   claims; (7) Mr. Lowry is simply asking for a larger personal share based on the particularities of his

20   own claims; and (8) Mr. Lowry cannot receive the relief he seeks from the Court because, as the

21   Class Notice he received instructed him: "You can ask the Court to deny approval by filing an

22   objection. However, you can't ask the Court to order a larger settlement; the Court can only

23   approve or deny the settlement." (Lindsay Decl., ¶¶ 61-70).

24        Should the Court wish to receive further details response to the objections, the Parties stand

25   prepared through their counsel to provide further briefing or respond to inquiries at the final

26   approval hearing. (Lindsay Decl., ¶ 70).

27

28

1    **9.    Settlement Procedure**

2          Another factor that may be considered by the Court is "the procedure by which the

3    settlement was arrived at." *See In re Patriot Am. Hospitality, Inc. Sec. Litig. (Open Market*

4    *Action)*, 2005 U.S. Dist. LEXIS 40995, *5 (N.D. Cal. 2005) ("To these factors, the court adds (9)

5    the procedure by which the settlements were arrived at, see Manual for Complex Litigation

6    (Second) § 30.44 (1985) . . . ."). As noted above and described in the declarations, the Settlement

7    was achieved only after protracted and complex arms-length negotiations by experienced counsel,

8    and with the assistance of an experienced mediator in two separate mediations. There is no doubt

9    that the settlement process was adversarial and, therefore, favors approval of the final settlement.

10   *See id.* at *8 (finding that "vigorously adversarial" procedure for arriving at settlement "militates

11   in favor of the settlement").

12   **C.    Approval of Attorneys' Fees, Costs, Representative Enhancement**

13         Plaintiff and Class Counsel have negotiated a Gross Settlement Amount of **$1.8 million** for

14   **56,156** employee Class members in connection with this non-reversionary Settlement. (Lindsay

15   Decl., ¶¶ 41-42; Yeremian Decl., ¶ 8). Administration of the Settlement has progressed past the

16   deadline to object or opt-out of the Settlement on **August 26, 2019**, and the final approval hearing

17   is approaching on **September 26, 2019**. Plaintiff therefore requests, without opposition from

18   Defendant, that Plaintiff's Counsel be awarded at final approval, from the preliminarily approved

19   Maximum Settlement Amount of $1.8 million, our attorney's fees (not to exceed 25% of the

20   Maximum Settlement Amount, i.e. $450,000) and reasonable costs incurred of up to $20,000, as

21   awarded by the Court (with present costs at approximately $16,750). (Yeremian Decl., ¶ 8; *see*

22   *also* Settlement at Lindsay Decl., Exhibit A and ECF No. 70-1, page 26, ¶ IV.H.5.b).

23         Class Counsel has provided support for its request that the Court award attorneys' fees at

24   the 25% federal benchmark based on Counsel's submissions in connection with this Motion and

25   efforts advancing this litigation to and through Settlement. (Yeremian Decl., ¶¶ 8-17; ECF No. 75-

26   3, ¶¶ 18-41; Lindsay Decl., 52-56; ECF No. 71-1, ¶¶ 58-60). David Yeremian & Associates, Inc.,

27   along with Messrs. Yeremian and Lindsay, and the other associate attorneys who have worked on

28   this action in the past (David Keledjian and Enoch Kim), have the background, resources, and

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

experience to zealously represent Plaintiff and the Settlement Class Members, and have done so. (Yeremian Decl., ¶¶ 4-5, 8-12; ECF No. 31-2, ¶¶ 3-9; ECF No. 75-3, ¶¶ 4-10, 18-41; Lindsay Decl., ¶¶ 9, 52-56; ECF No. 75-1, ¶¶ 61-70). Class Counsel has also addressed the reasonable of its hourly rates. (Yeremian Decl., ¶ 10; ECF No. 75-3, ¶¶ 23-30; Exhibit A at ECF No. 75-4; Lindsay Decl., ¶¶ 53, 55; ECF No. 75-1, ¶¶ 58-60).

Class Counsel has provided the Court with a summary of the hours invested in this case and the Time and Task Detail listings for the attorneys working on it addressing their hours and attorneys' fees for the lodestar cross-check. (Yeremian Decl., ¶ 13; ECF No. 75-3, ¶¶ 30-33; Exhibits B, C, D thereto at ECF Nos. 75-5, 75-6, 75-7; Lindsay Decl., ¶¶ 52-56; ECF No. 75-1, ¶¶ 58-60; Exhibit A thereto at ECF No. 75-2).

As reported in connection with the filing of the Fees and Costs Motion, Class Counsel incurred approximately **708** attorney hours through the **August 12, 2019** filing, amounting to **$428,460** in attorneys' fees. (Yeremian Decl., ¶ 14; ECF No. 75-3, ¶ 31, and ECF Nos. 75-5, 75-6, 75-7; Lindsay Decl., ¶¶ 54-56; ECF No. 75-1, ¶¶ 58-60, and ECF No. 75-2). Since **August 12, 2019** and through the filing of the present motion, Class Counsel reports that it has incurred an additional **31 hours** between Messrs. Yeremian and Lindsay, which results in **739** total hours and **$448,785** in total attorneys' fees through the filing of this Motion. (Yeremian Decl., ¶¶ 15-16; Lindsay Decl., ¶¶ 54-55). This number is right at the requested amount of **$450,000** in reasonable attorneys' fees, and will surpass it when considering all the further hours counsel will incur in taking this action through final approval hearing and funding and disbursement. (Yeremian Decl., ¶ 16). Therefore, no lodestar multiplier will be required to award Class Counsel reasonable attorneys' fees of **$450,000** in accordance with the federal benchmark of **25%** of the **$1.8 million** Settlement fund, which Class Counsel and Plaintiff have created for the Class members. Class Counsel respectfully requests that the Court award attorneys' fees in the amount of **$450,000**.

Class Counsel's declaration in support of the Fees and Costs Motion also reported that it had incurred **$15,598.74** in litigation costs through **August 12, 2019**. (Yeremian Decl., ¶ 18; ECF No. 75-3, ¶ 41, and Exhibit E thereto (Costs Invoice) at ECF No. 75-8). Since that time, and to take this action through the final approval hearing, Class Counsel reports that the total litigation

costs it has incurred are now at **$16,750.00**. (Yeremian Decl., ¶ 19, and **Exhibit A** thereto for updated Costs Invoice). The Settlement as preliminarily approved allocates up to **$20,000** for litigation costs, but Class Counsel has incurred less. Any portion of the requested Class Counsel Award ($450,000 in fees and up to $20,000 in costs) or the Class Representative Enhancement and Service Award to Plaintiff ($7,500) that is not awarded to Class Counsel or Plaintiff (in this instance the difference of $3,250) will be added back into the Net Settlement Fund and will be distributed to Settlement Class Members as provided in the Agreement. (Lindsay Decl., Exhibit A, Settlement, ¶ IV.H.5.b.). Class Counsel also requests that the Court award it costs reimbursements for reasonable litigation costs and expenses incurred in this action in the amount of **$16,750**.

Finally, Class Counsel and Plaintiff request that the Court award Plaintiff the requested Class Representative Enhancement and Service Award of **$7,500**. Class Counsel has addressed the contributions Plaintiff has made to this litigation and his efforts on behalf of the Class members. (Yeremian Decl., ¶ 7; ECF No. 75-3, ¶¶ 11-17). Plaintiff also provided a Declaration in support of the Fees and Costs Motion and award of the requested $7,500 Class Representative Enhancement and Service Award, which details his invaluable contributions to this litigation and his unwavering efforts to secure this Settlement on behalf of the Class members. (*See* Hernandez Declaration in support of Fees and Costs Motion, at ECF No. 75-12, ¶¶ 3-20). Plaintiff and Class Counsel request that he be awarded the requested Class Representative Enhancement and Service Award of **$7,500**.

### D.    Final Certification for Settlement Purposes Is Appropriate

For the reasons set forth in greater detail in connection with Plaintiff's previously filed Motion for Preliminary Approval, Supplemental Briefing, and Fees and Costs Motion, Plaintiff respectfully submits that the proposed putative Class satisfies the requirements of Fed. Civ. P. 23(b)(3) for purposes of settlement. The Court has preliminarily certified the putative class in its Preliminary Approval Order. (*See* ECF. No. 72). The "Class Period" means the period from **December 16, 2012** (the original filing date of this action) through **March 5, 2019**. The "Settlement Class Members" are defined as: "All current and former hourly-paid employees of Defendant in California during the Class Period (or if any such person is incompetent, deceased,

1  or unavailable due to military service, the person's legal representative or successor in interest

2  evidenced by reasonable verification)." The "Settlement Class Members" *shall not* include: (i)

3  any person who submits a timely and valid request for exclusion as provided in this Agreement;

4  (ii) all persons employed by Defendant in California as an hourly-paid "package handler," whose

5  employment with Defendant ended on or before **September 1, 2014**, and who released claims in

6  the settlement of the *Rangel* lawsuit (the "*Rangel* Settlement Participants"); (iii) all persons who

7  previously released the Released Claims under any other separate agreement. (Lindsay Decl., ¶

8  43; Exhibit A thereto, Second Amended Settlement, ¶¶ II.F, II.HH).  Defendant's records

9  establish **55,156** Settlement Class Members. (Myette Decl., ¶¶ 8-10).

10        **E.        Settlement Administration Costs Should Be Approved**

11        The Court approved Settlement Administrator, Rust Consulting, Inc., is and has been

12  responsible for mailing the Notice packets to the Class members, processing notice packets,

13  responding to Class member inquiries, calculating the settlement payments, transmitting individual

14  settlement payments to participating Class Members, providing status reports of the claims

15  administration to all counsel on a regular basis, calculating and withholding the Class Members'

16  share of taxes, paying those withholdings to the appropriate government agencies, distributing the

17  settlement checks, and performing such other duties as the parties may direct. (*See* Myette Decl.,

18  ¶¶ 3-21). The preliminarily approved costs incurred by Rust Consulting, Inc. are $135,000.00, and

19  this is the amount Rust is requesting it be awarded at final approval. (*Id*. at ¶ 22). Plaintiff therefore

20  requests final approval of the Settlement Administration costs to Rust Consulting, Inc. in the

21  amount of **$135,000.**

22  ///

23  ///

24  ///

25

26

27

28

1    IV.    <u>CONCLUSION</u>

2           For the reasons set forth herein, and in the Motion for Preliminary Approval and Motion

3    for Attorneys' Fees and Costs and Class Representative Enhancement, and the documents

4    submitted in support, Plaintiff respectfully requests that this Court grant final approval to the

5    proposed Settlement and enter the proposed Judgment and Order in the form submitted herewith.

6

7    DATED:    September 5, 2019                          DAVID YEREMIAN & ASSOCIATES, INC.

8
                                                  By /S/ Alvin B. Lindsay
9                                                       David Yeremian
                                                        Alvin B. Lindsay
10                                                      Attorneys for Plaintiff
                                                        STEVEN HERNANDEZ
11                                                      and the Settlement Class Members

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28